## RICE, GUARDIAN, *v.* THE STATE OF OHIO.

*Constitutional law — Classification and uniform operation — Pay-patient law — State benevolent institutions — Section 1815 et seq., General Code.*

1. The mere fact that a statute is based on a classification, and in effect applies to some persons and not to others, does not render it invalid, where it operates uniformly on all persons in the same class and under similar conditions.
2. The general assembly had full power and authority to enact what is known as the "pay-patient" law, applying to institutions for the care of the insane, and its enactment was purely a matter of public policy and peculiarly within the domain of the legislative branch of the government.

(Decided December 18, 1918.)

ERROR:    Court of Appeals for Knox county.

*Mr. B. B. Ferenbaugh* and *Mr. D. H. Hyatt,* for plaintiff in error.

*Mr. Joseph McGhee,* attorney general; *Mr. Charles L. Bermont,* prosecuting attorney, and *Mr. L. D. Johnson,* for defendant in error.

HOUCK, J.    Question:    Is the "pay-patient law" of Ohio constitutional?

This action was brought in the court of common pleas of Knox county, under favor of Sections 1815 to 1815-12, inclusive, General Code.

An answer was filed by the plaintiff in error, defendant below, which admitted the allegations of the petition, but set up the unconstitutionality of the law as a defense.

A general demurrer was interposed to this answer and the same was sustained.

An amended answer was then filed which contained three separate defenses. The first, after practically admitting all of the allegations of the petition, contained a general denial; the second set up the defense that the ward was a pensioner and had no means except what had been received as a pension and that plaintiff below was therefore unable to enforce the payment of its claim; the third defense set up the unconstitutionality of the law.

A general demurrer was interposed to the second and third defenses of the amended answer and the same was sustained.

The case then went to trial to a jury upon the petition, the first defense in the amended answer, and the evidence, and after the evidence was adduced the court directed the jury to return a verdict for the plaintiff below for the full amount of its claim, being the sum of $397.06 for one hundred and thirteen weeks support at $3.10 per week, and interest thereon, furnished John W. Young, an insane person, at the State Hospital for the Insane, at Columbus, Ohio.

A motion for a new trial was filed and overruled, and exceptions noted.

Counsel for plaintiff in error seek to reverse the judgment in this case upon the ground that the "pay-patient law" is unconstitutional for the reason that it is in conflict with Section 26, Article II, and Section 1, Article VII, of the Constitution of Ohio.

The first is:

"All laws, of a general nature, shall have uniform operation throughout the state   *   *   *."

The second is:

"Institutions for the benefit of the insane, blind, deaf and dumb, shall always be fostered and supported by the state; and be subject to such regulations as may be prescribed by the general assembly."

Do the requirements of this law operate uniformly throughout the state of Ohio? An examination of its provisions at once satisfies us that the answer must be "yes."

It will be conceded, we think, that the mere fact that a statute is based on a classification, and in effect applies to certain persons to the exclusion of others, does not affect its validity, if it be so made that all persons subject to its terms are treated alike under like circumstances and conditions.

We hold that legislation, which in effect carries out a public purpose, and applies to a class or classes of unfortunate persons of our state, as the humane law now under consideration seeks to do, and which is limited in its application, if within the bounds of its operation it affects alike all persons similarly situated, is not within the prohibition of Ohio's Constitution.

It is necessary that such law must affect alike all persons in the same class and under similar conditions, the restriction being that the law must apply to all of a given class and that individuals from such classes can not be excepted. It will be observed that individuals are not excepted from the provisions of the "pay-patient law," but it applies to all persons who come within the class of insane, blind, etc.

The rule here laid down is well settled in Ohio, and is found in the second proposition of the syllabus in *Steele, Hopkins & Meredith Co.* v. *Miller,* 92 Ohio St., 115, which reads:

"A statute is general and uniform, within the requirements of the constitution, if it operates equally upon every person and locality within the circumstances covered by the act, and when a classification has a reasonable basis it is not invalid merely because not made with exactness or because in practice it may result in some inequality."

Testing the "pay-patient law" by the provisions of Section 1, Article VII of our Constitution, will it stand or fall?

Counsel for plaintiff in error in their brief say:

"It would seem very clear that the Legislature derives its power from this provision of the Constitution to enact Section 1815, General Code, because it is in accordance with its provisions, but it is entirely without power to create in the law such exceptions as are contained in the sections that follow."

The admission made by learned counsel in the first part of the above statement is sound, but the latter part of same, in which it is claimed that subsequent sections of this law create exceptions making it unconstitutional, is not well taken. We reach this conclusion after a careful examination of all the sections of the act in question.

Counsel have conceded that this provision of the constitution is not self-executing, and that in order to make it operative it was necessary to act, which

the legislature has done, and having done so with proper discretion and within constitutional bounds the law is effective.

The constitution-makers of our state acted wisely and humanely when they provided for the fostering and support of institutions for the insane, blind, etc., and the legislature of Ohio exemplified its humanitarian spirit when it passed the law now before us for consideration, and thereby provided for the maintenance, support and care of such unfortunate wards.

The necessity of having places for the restraint as well as for the care of insane persons will not be questioned. This is essential for all so afflicted, whether they be rich or poor. The state for the sake of society, the protection of the public and the personal welfare and safety of all such unfortunate persons is bound to and does provide a place and suitable care for them, and our legislature in its wisdom passed this "pay-patient law," requiring such persons, if they have the means, and, if not, then certain of their relatives, to pay for said support an amount not to exceed $3.50 per week. To us this is not an unreasonable requirement, and where the patient is able to pay, in part, for his support in a public institution, as is clearly evident in the present case, we feel the legislature acted within its right and possessed full power and authority to make the law and that its enactment was purely a matter of policy, which was to be determined by the enacting body, and that it does not come within any inhibition of the Constitution of Ohio.

We are unable to find, in law or sound morals, any reason why an insane person, if he possesses a sufficient amount of "this world's goods" to do so, should not, at least in part, contribute to the cost of his support, while confined in a public insane hospital, which is fostered by the state, and whereby it is sought to restore him to reason and return him to his family and loved ones, thus enabling him to again take his former place in community life.

Are the taxpayers of our state to be compelled to pay entirely for the support of such persons, and they be excused from contributing thereto, although amply able to do so? This would be in direct violation of what we hold the rule should be: that for one to become a proper subject to receive the benefit of public charity he first must have reasonably exhausted all his own means for support, and when this is done it clearly follows that such person, if he be insane, is entitled to care and support while receiving treatment at a state hospital for the insane, without legal claim that he should contribute to the expense.

It might be well to recall that every presumption is in favor of the validity of an act of the legislature; and in determining whether a law is constitutional or unconstitutional courts must and do presume in the beginning that it is constitutional. If the constitution prescribes one rule, and the law another and different one, the law must and does fail, and should be declared void.

Courts also presume that the legislature acted with integrity, using its best judgment, and with

an honest purpose to keep within the restrictions and limitations prescribed by the constitution.

Applying these rules to the case in hand the law now being attacked must stand.

The question for determination in the case at bar is an important one, and so far as we have been able to learn this is the first time it has been presented to a court of appeals in this state, and owing to its importance and far-reaching effect upon the unfortunate wards of Ohio's commonwealth, as well as upon every citizen within its confines, we have given it careful and laborious consideration, and it is the unanimous judgment of this court that the "pay-patient law," as it now stands in Ohio, is constitutional, and not repugnant to or in any way in conflict with the constitution of our state.

We have examined all of the claimed errors, as set forth in the petition of plaintiff in error, and find none of them well taken. It follows that the judgment of the common pleas court must be affirmed.

*Judgment affirmed.*

POWELL and SHIELDS, JJ., concur.